**OCEANAIR OF FLORIDA, INC., and Air Illinois, Inc., Petitioners,**

v.

**UNITED STATES of America NATIONAL TRANSPORTATION SAFETY BOARD, and T. Allan McArtor, Administrator of Federal Aviation Administration, Respondents.**

No. 88–3900.

United States Court of Appeals, Eleventh Circuit.

Nov. 15, 1989.

James B. Curasi, Tallahassee, Fla., for petitioners.

Mardi Ruth Thompson, Federal Aviation Admin., U.S. National Transp. Safety Bd., Washington, D.C., for respondents.

Petition for Review of an Order of the National Transportation Safety Board.

Before ANDERSON and EDMONDSON, Circuit Judges, and HENDERSON, Senior Circuit Judge.

EDMONDSON, Circuit Judge:

Petitioner, Oceanair of Florida, Inc. ("Oceanair"), holding company of Air Illinois, Inc., appeals a ruling by the National

---

* Honorable Clarence W. Allgood, Senior U.S. District Judge for the Northern District of Alabama, sitting by designation.

Transportation Safety Board (the "Board") approving action by the Federal Aviation Administration and revoking Oceanair's operating certificate. In February 1987, after giving Oceanair proper notice and opportunity to be heard, the FAA issued an order temporarily suspending Oceanair's operating certificate on the grounds that Oceanair had no plane that it could fly in the United States, therefore lacking adequate equipment and not currently operating as required by Federal Aviation Regulations, 14 C.F.R. Part 121.[1] Oceanair appealed to the Board, properly requesting an evidentiary hearing before an administrative law judge ("ALJ"). The FAA's suspension order became its complaint in the hearing, *see* 49 C.F.R. sec. 821.31 (1988), which was set for June 25, 1987.

On May 20, about one month prior to the hearing, the FAA, in the form of an amendment to its complaint, asserted new charges against Oceanair and issued an order of complete revocation of Oceanair's certificate rather than a temporary suspension. The new charges alleged that Oceanair no longer had adequate maintenance facilities to service jet aircraft.[2] On June 4, Oceanair requested an opportunity to be heard in the form of an informal confer-ence on the new charges. On June 15, the FAA apparently offered to hold an informal conference prior to the June 25 hearing, but Oceanair declined, citing counsel's workload and scheduling conflicts.

Oceanair filed a motion to dismiss the amendment to the complaint, which the ALJ denied. The hearing was then held as scheduled on the amended complaint, at which time the ALJ ruled that Oceanair's certificate should be temporarily suspended. Both Oceanair and the FAA filed appeals to the Board from this ruling: Oceanair requested a rehearing, while the FAA requested that the order be changed from suspension to revocation. The Board denied Oceanair's request for rehearing, overruled the ALJ's order, and revoked Oceanair's certificate. Actions of the Board revoking operating certificates are directly appealable to this court.

■ This case presents a question of first impression for this court: whether the FAA violated Section 609(a) of the Federal Aviation Act of 1958, 49 U.S.C.App. sec. 1429(a) (1982), by amending its complaint against Oceanair at the appeal stage to include new charges and a revised order without first granting Oceanair an opportu-

---

1. Oceanair's operating certificate permitted it to use the one aircraft that it owned, which became inoperable in September 1986 due to engine malfunction. Earlier, in May 1986, Oceanair entered into an agreement to acquire two newer aircraft that were then operating in Canada; but the FAA advised Oceanair that Oceanair could not operate these planes in the United States unless it obtained an exemption to the small community noise standards.

2. The suspension order, dated February 17, 1987 and effective March 10 of that year, included the following charges:

    1. At all times material herein you were and are the holder of Air Carrier Operating Certificate No. AGL–655.

    2. At all times material herein, Air Illinois was and is required to operate under the requirements of Part 121 of the Federal Aviation Regulations applicable to domestic and flag air carriers.

    3. You currently are authorized to operate only civil aircraft N1542, a British Aerospace BAC–1–11–203AE, under your certificate.

    4. From about September 16, 1986, to the present, N1542 has been out of service due to repairs needed on one of its engines.

Record on App. 1–2.

The revocation order, dated and effective May 20, 1987, included charges 1–4 above and added the following charges:

    5. As of this date, Air Illinois neither owns nor has the use of an aircraft with which to conduct operations under Part 121 of the Federal Aviation Regulations.

    6. Air Illinois' operations specifications provide that it is authorized to utilize the provisions of a contractual [sic] agreement with U.S. Air, Inc., for the maintenance of N1542.

    7. The above agreement with U.S. Air is Air Illinois' approved means of meeting [sec.] 121.25(b)(6).

    8. In or about September, 1986, the above agreement with U.S. Air expired.

    9. Air Illinois currently has no means of complying with [sec.] 121.25(b)(6).

    10. By reason of the above, Air Illinois lacks qualifications necessary to hold an air carrier operating certificate.

Record on App. 42–43.

Although the order was effective on May 20, the parties agree that it was stayed by the pending appeal to the Board. *See* 14 C.F.R. sec. 13.19(d) (1988).

nity to be heard by the FAA on the new charges. We hold that it did. Because the Board and the ALJ based their decisions on both the charges made by the FAA originally and the charges improperly added during the appeal procedure, we cannot allow the decisions to stand. We vacate the Board's decision and remand for proceedings consistent with this opinion, including rescission of the FAA's revocation order and of any charges upon which an informal conference has not been held, as well as a new hearing before an ALJ.[3]

Oceanair argues[4] that Section 609(a) required that it be given an opportunity to be heard on the additional charges before the FAA's issuance of the order of revocation.[5] Our role in appraising Oceanair's contentions about Section 609(a) "is not to make policy, but to interpret a statute." *See Neitzke v. Williams*, —— U.S. ——, 109 S.Ct. 1827, 1832, 104 L.Ed.2d 338 (1989) (Marshall, J.).

Section 609(a) provides:

Prior to amending, modifying, suspending, or revoking any of the foregoing certificates, the Secretary of Transportation shall advise the holder thereof as to any charges or other reasons relied upon by the Secretary of Transportation for his proposed action and, except in cases of emergency, shall provide the holder of such certificate an opportunity to answer *any* charges and be heard as to why the certificate should not be amended, modified, suspended, or revoked.

14 U.S.C.App. sec. 1429(a) (1982) (emphasis added).[6] The statute clearly states that before revoking the certificate the Secretary must advise the certificate holder of any charges and afford the certificate holder an opportunity to answer those charges.

The Secretary of Transportation's duties and powers under this statute are vested in the Administrator of the FAA by 49 U.S.C. sec. 106(g)(1) (Supp.V 1987). The certificate holder's options for exercising the Section 609(a) right to be heard are set out in Federal Aviation Regulation 14 C.F.R. sec. 13.19(c) (1988), and include the right to request an informal conference with FAA counsel. An order of the FAA becomes effective immediately following issuance, unless the certificate holder elects to appeal to the Board. *See* 14 C.F.R. sec. 13.-19(d) (1988). Therefore, "revoking" a certificate, as that word is used in Section 609(a), means issuing an order to revoke. We have held that "no such order shall take effect until the certificate holder has been given notice and an opportunity for a hearing," *Pastrana v. United States*, 746 F.2d 1447, 1450 (1984); so the opportunity to be heard must occur at the agency level before issuance of the order.

█ The FAA does not quarrel with the idea that Section 609(a) usually requires an opportunity to be heard by the FAA on the charges before it issues an order of revocation. Instead, the FAA contends that the procedural setting of its action in adding charges and ordering revocation of Oceanair's certificate means that Section 609(a) does not apply. More specifically, the FAA argues that Section 609(a), and consequently 14 C.F.R. sec. 13.19(c), did not apply once Oceanair appealed the original order to the Board. According to the FAA, the Board's Rules of Practice in Air Safety Proceedings governed amendments to the complaint. Pursuant to Board rules, the Administrator is permitted to amend its complaint without leave of the Board at any time more than fifteen days prior to the hearing. *See* 49

---

**3.** We do not imply that the FAA may never bring the additional charges against Oceanair and issue an order of revocation; but should the FAA choose to do so, it must comply with the requirements of Section 609(a).

**4.** Oceanair also argued to this court that it did not receive a fair hearing before the ALJ. Because we are remanding for further proceedings, Oceanair will have an opportunity for another evidentiary hearing, and thus we need not rule on this question.

**5.** Oceanair contends that it was harmed by the FAA's violation of the statute in that Oceanair would have conducted its defense differently had the FAA originally ordered revocation rather than suspension.

**6.** The parties agree that this is not an emergency situation, and that the requirement of opportunity to be heard on the original charges and order of suspension was satisfied by an informal conference held in February 1987.

C.F.R. sec. 821.12(a) (1988). But the Board's administrative provisions cannot overrule or modify an act of Congress, such as Section 609(a).

Amendments are improper if they include new charges without first giving the certificate holder notice and opportunity to be heard by the FAA on those charges. To hold otherwise would be to allow 609(a) rights to fluctuate depending on the happenstance that a certificate holder was already engaged with the FAA in a controversy that was the subject of an administrative appeal. We believe that 609(a) plainly fixes the rights of certificate holders and the duties of the FAA as representative of the Secretary. These rights and duties remain constant whether or not the certificate holder is involved in an appeal.[7]

We think that the FAA acted in good faith in this case, and we see merit in the FAA's arguments that our holding will make the administrative process more inconvenient. Still, the procedural requirements of Section 609(a) were intended by Congress to protect the certificate holder from arbitrary action on the part of the FAA, however unintended it may be. *See* H.R. 2360, 85th Cong., 2d Sess. (1958), 2 U.S. Code Cong. & Admin. News 3741, 3748 (1958). "The history of liberty has largely been the history of observance of procedural safeguards." *McNabb v. United States*, 318 U.S. 332, 347, 63 S.Ct. 608, 616, 87 L.Ed. 819 (1943) (Frankfurter, J.). More to the point in this case, the language of the statute is clear; we find no ambiguity to support the holding the FAA urges.

VACATED and REMANDED.

---

7. In a related argument, the FAA asserts that once an appeal is made to the Board, it is the Board's jurisdiction to ensure that all process which is due is given. While this may be true, the Board may not fail to grant certificate holders at least the process required by the federal statute.